PHILIP D. STERN & ASSOCIATES, LLC
ATTORNEYS AT LAW
697 Valley Street, Suite 2d
Maplewood, NJ 07040
(973) 379-7500
Attorneys for Plaintiff, Elizabeth J. Meloskie

## UNITES STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETH J. MELOSKIE, Plaintiff, vs. VIKING CLIENT SERVICES, INC., also known as Viking Client Service, Inc. and Viking Collection Services, Defendant. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff, Elizabeth J. Meloskie ("MELOSKIE"), individually and on behalf of all others similarly situated, by way of Complaint against Defendant, Viking Client Services, Inc. ("VIKING"), says:

### I. NATURE OF THE ACTION

1. This action stems from the VIKING's violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.

### II. PARTIES

2. MELOSKIE is a natural person.

3. At all times relevant to the factual allegations of this Complaint, MELOSKIE was a citizen of the State of New Jersey, residing in Sussex County, New Jersey.

4. At all times relevant to the factual allegations of this Complaint, VIKING was a for-profit Minnesota corporation registered as a foreign corporation with the State of New Jersey. According to the records of the Minnesota Secretary of State, VIKING also uses the assumed name "Viking Collection Services" and has reserved the name "Viking Collection Services, Inc."

5. On information and belief, a principal business location of VIKING is 7500 Office Ridge Circle, #100 Eden Prairie, Hennepin County, Minneapolis 55344.

### III. JURISDICTION AND VENUE

6. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

7. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to MELOSKIE's claims occurred within this federal judicial district, and because VIKING is registered to transact business in the State of New Jersey and regularly transacts business within this federal judicial district and, therefore, resides in the State of New Jersey within the meaning of 28 U.S.C. § 1391(b) and (c).

### IV. LEGAL BASIS FOR FAIR DEBT COLLECTION PRACTICES ACT CLAIMS

8. The FDCPA's elegant duality simultaneously advances both consumer and business interests by protecting vulnerable consumers while promoting marketplace competition. 15 U.S.C. § 1692(e). Upon finding abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors which contributed to the number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by debt collectors, *and* to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. __, 130 S. Ct. 1605, 1623, 176 L. Ed. 2d 519 (2010) (internal quotes and ellipsis omitted; emphasis added); 15 U.S.C. § 1692(a).

9. Congress also found that existing consumer protection laws were inadequate. 15 U.S.C. § 1692(b).

10. "Congress recognized that 'the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness or marital difficulties or divorce.'" *FTC v. Check Investors, Inc.,* 502 F.3d 159, 165 (3d Cir. 2007). Nevertheless, "'[a] basic tenet of the Act is that *all* consumers, *even those who have mismanaged their financial affairs resulting in default on their debt*, deserve 'the right to be treated in a reasonable and civil manner.'" *FTC, supra,* 502

F.3d at 165 (emphasis added) quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997).

11. "Congress also intended the FDCPA to be self-enforcing by private attorney generals [sic]." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). "In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused. In this way, the FDCPA enlists the efforts of sophisticated consumers like Jacobson as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Services, Inc.*, 516 F.3d 85, 91 (2d Cir. 2008); and, see, *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055 (9th Cir. 2011).

12. The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," *Brown v. Card Serv. Ctr*, 464 F.3d 450, 453n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). For example, a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 455. Furthermore, except where the Act expressly makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing, in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

13. To prohibit harassment and abuses by debt collectors the FDCPA, at 15 U.S.C. § 1692d, provides that a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt and names a non-exhaustive list of certain *per se* violations of harassing and abusive collection conduct. 15 U.S.C. § 1692d(1)-(6). That list includes:

13.01. Placing a telephone call without meaningful disclosure of the caller's identity, 15 U.S.C. § 1692d(6).

14. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, provides that a debt collector may not use any false, deceptive,

or misleading representation or means in connection with the collection of any debt and, without limiting the generality of the prohibited conduct, enumerates sixteen acts and omissions which are deemed to be *per se* violations of that section. 15 U.S.C. § 1692e(1)-(16). That list includes:

> 14.01. Using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10); and
>
> 14.02. Failing to disclose in the initial communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and in subsequent communications that the communication is from a debt collector, 15 U.S.C. § 1692e(11).

15. To eliminate abusive debt collection practices, the FDCPA, at 15 U.S.C. § 1692g(a) requires a debt collector to provide written notice to a consumer in a debt collector's initial written communication, which must be made within five days after the initial communication.

16. Liability under the FDCPA arises upon the showing of a single violation. *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3 (2d Cir. 1993).

17. Liability under the FDCPA is excused *only* when a debt collector establishes, as an affirmative defense, the illegal conduct was either "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c), or an "act done or omitted in good faith in conformity with any advisory opinion of the" Federal Trade Commission, 16 U.S.C. § 1692k(e). Thus, common law privileges and immunities are not available to absolve a debt collector from liability under the FDCPA. See, *Heintz v. Jenkins*, 514 U.S. 21, (1995); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3rd Cir. 2011); and *Sayyed v. Wolpoff & Abramson*, 485 F. 3d 236, 232-233 (4th Cir. 2007).

18. A debt collector who violates any provision of the FDCPA is liable for any actual damages, "additional damages" (also called "statutory damages") up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a). "[T]he FDCPA permits and ***encourages*** parties who

have suffered no loss to bring civil actions for statutory violations." *Jacobson, supra,* 516 F.3d at 96 (emphasis added).

19. The FDCPA also provides for class relief "capped" at the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA." *Weiss, supra,* 385 F.3d at 345. Indeed, while limiting class relief, Congress nevertheless recognized the effectiveness of class actions to enforce the FDCPA and, therefore, mandated that a class action should be maintained "without regard to a minimum individual recovery." *Id.* When a debt collector opposes class certification based on its minimal or negative net worth, "there is a chance that no claims would proceed against Defendants due to a lack of financial incentive, thereby leaving unpunished allegedly thousands of FDCPA violations. This is exactly the kind of result Congress intended to avoid through the creation of the class action form." *Barkouras v. Hecker,* 2006 WL 3544585, 2006 U.S.Dist.Lexis 88998 (D.N.J. Dec. 8, 2006).

20. MELOSKIE, individually and on behalf of all those similarly situated seeks statutory damages, attorney fees, and costs pursuant to the FDCPA.

V. **FACTS**

21. According to VIKING's letter addressed to MELOSKIE dated August 17, 2012 and received by her within several days thereafter, VIKING sought to collect from MELOSKIE a financial obligation ("Debt") which was assigned to VIKING by Icon Equities, LLC as the purchaser of on her account with Citibank South Dakota.

22. All financial obligations incurred by MELOSKIE to Citibank South Dakota arose from one or more transactions for primarily personal, family, or household purposes and, therefore, the Debt arose from one or more transactions for primarily personal, family, or household purposes.

23. VIKING is regularly engaged in the collection of debts.

24. The principal purpose of VIKING is the collection of debts and it uses the mails, telephone, the internet and other instruments of interstate commerce.

25. According to VIKING's website, "With over more than 40 years in the collections industry, Viking offers a full range of recovery solutions

for large, regional and community banks, insurance companies, debt buyers and other financial establishments across the United States." http://www.vikingservice.com//newsite/about.html (accessed September 29, 2012).

26. The Debt was assigned to VIKING for collection after it was in default.

27. In VIKING's attempt to collect the Debt, its employees or agents acting on behalf of VIKING left voice mail messages for MELOSKIE including the following four messages ("Messages") which are transcribed below along with the timestamp information from her voice mail provider:

27.01. [Left September 14, 2012 at 10:32 a.m.] Hello Elizabeth Meloskie. It's Derek Robins calling you from Viking Client Services. Please return my call to 1-800-477-9489. That's a direct line.

27.02. [Left September 19, 2012 at 8:15 p.m.] This call is to get in touch with Elizabeth Meloskie. It's Derek Robins of Viking Client Services. My return number is 1-800-477-9489. It's important that I get in touch with you and speak with you directly. Please phone me back at Viking Client Services regarding a personal business matter. 1-800-477-9489. Thanks a lot.

27.03. [Left September 25, 2012 at 12:34 p.m.] Elizabeth Meloskie. This is Derek Robins at Viking Client Services calling. My direct line's 1-800-477-9489. Please return the call when you receive this voicemail.

27.04. [Left September 26, 2012 at 8:47 p.m.] Call to get in touch with Elizabeth Meloskie. This is Derek Robins from Viking Client Services. My return number's 1-800-477-9489. It's a direct.

28. According to the information provided by MELOSKIE's voice mail provider, the caller identification number associated with each of the foregoing calls was (952) 944-7575. That same telephone number is listed both on a letter from VIKING to MELOSKIE dated September 20, 2012 and on VIKING's website associated with its location in Eden Prairie, Minnesota, http://www.vikingservice.com/newsite/minnesota.html (accessed September 29, 2012).

29. None of the Messages disclosed that the purpose of the call was to collect a debt.

30. None of the Messages disclosed either that VIKING is a debt collector or that VIKING was attempting to collect a debt and that any information obtained would be used for the purpose of attempting to collect a debt.

### VI. POLICIES AND PRACTICES COMPLAINED OF

31. It is VIKING's policy and practice, when attempting to collect defaulted debts allegedly owed to Icon Equities, LLC, to leave voice mail messages for consumers which are false, deceptive and misleading in that they fail to state that the purpose of the call is to attempt to collect a debt and they fail to state either that VIKING is a debt collector or that VIKING was attempting to collect a debt and that any information obtained would be used for the purpose of attempting to collect a debt.

32. Such policies and practices of Defendants violate 15 U.S.C. §§ 1692d(6), 1692e(10), and 1692e(11).

33. In 2012, prior to the filing of this Complaint, VIKING has been sued at least four times in a United States District Court in which it was alleged that VIKING left voice mail messages which failed to either meaningfully disclose the caller's identity, that VIKING is a debt collector, or that VIKING was attempting to collect a debt and that any information obtained would be used for the purpose of attempting to collect a debt. Those four cases are identified as:

33.01. *Kelley v. Viking Client Services, Inc.*, Case commenced on May 15, 2012 in the United States District Court for the Middle District of North Carolina (Rockingham Division) and designated in that court by Case No. 1:12-cv-00485-UA-JEP.

33.02. *Garlicki v. Viking Client Services, Inc.*, commenced on June 22, 2012 in the United States District Court for the Southern District of Florida and designated in that court by Case No. 0:12-cv-61259-KMW.

33.03. *Oberlander v. Viking Client Services, Inc.*, commenced on September 13, 2012 in the United States District Court for the Eastern District of New York as a putative class action and designated in that court by Case No. 1:12-cv-04599-ARR-JMA.

**33.04.** *DuPont v. Viking Client Services, Inc.*, commenced on September 15, 2012 in the United States District Court for the Western District of Michigan (Southern Division) and designated in that court by Case No. 1:12-cv-00993-RJJ.

### VII. CLASS ALLEGATIONS

**34.** MELOSKIE brings this action individually and as a class action on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

**35.** Subject to discovery and further investigation which may cause Plaintiff to modify the following class definition when she moves for class certification, Plaintiff defines the "Class" as follows:

> Excluding persons who, prior to the date this action is certified to proceed as a class action, either (a) died, (b) obtained a discharge in bankruptcy, (c) commenced an action in any court against Viking Client Services, Inc. alleging any violation of the Fair Debt Collection Practices Act, or (d) signed a general release of claims against Viking Client Services, Inc., the Class consists of:

> Each natural person to whom Viking Client Services, Inc. (also known as Viking Client Service and Viking Collection Services) caused a telephone call to be placed during the Class Period to a New Jersey consumer in an attempt to collect a debt assigned by Icon Equities, LLC to Viking Client Services, Inc. and left a voice message which failed to state either (i) that the purpose of the call was to collect a debt, (ii) that the caller is a debt collector, or (iii) that the call was placed in an attempt to collect a debt and that any information obtained would be used for that purpose.

**36.** Subject to discovery and further investigation which may cause Plaintiff to modify the following definition of the "Class Claims" when she moves for class certification, Plaintiff defines the Class Claims as:

> Claims arising under the Fair Debt Collection Practices Act based on VIKING's leaving a voice message for an individual in an attempt to collect a debt in which the message failed to state either (i) that the purpose of the call was to collect a

debt, (ii) that VIKING is a debt collector, or (iii) that the call was placed in an attempt to collect a debt and that any information obtained would be used for that purpose.

37. Subject to discovery and further investigation which may cause Plaintiff to modify the following definition of the "Class Period" when she moves for class certification, Plaintiff defines the Class Period as the continuous time period between and including one year prior to the filing of this Complaint and ending on the date this Complaint is filed.

38. Based on discovery and further investigation (including, but not limited to, Defendants' disclosure of class size and net worth), Plaintiff may, at the time she moves for class certification, modify the definitions of the Class, Class Claims, and the Class Period as set forth in this pleading, and may seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

39. The identity of each member of the Class is readily ascertainable from VIKING's records and those records of Icon Equities, LLC.

40. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a) because there is a well-defined community interest in the litigation in that:

41. Plaintiff is informed and believes, and on that basis alleges, that the members of the Class are so *numerous* that joinder of all members would be impractical. On information and belief, there are more than forty members of the Class.

42. *Common questions of law and fact* exist as to all members of the Class, the principal issues are whether Defendant's voice messages left for consumers in an attempt to collect a debt failed to meaningfully identify the caller in violation of 15 U.S.C. § 1692d(6), failed to disclose either that the caller is a debt collector or that the call was placed in an attempt to collect a debt and that any information obtained would be used for that purpose in violation of 15 U.S.C. § 1692e(11), or that, by leaving the message, Defendant used a false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10).

43. MELOSKIE's claims are *typical* of the claims of the class members. MELOSKIE and all members of the Class have claims arising out

of the VIKING's common and uniform course of conduct with respect to leaving voice mail messages when attempting to collect a debt assigned to VIKING by Icon Equities, LLC.

**44.** MELOSKIE will fairly and adequately *protect* the interests of the class members insofar as MELOSKIE has no interests that are adverse to the absent class members. MELOSKIE is committed to vigorously litigating this matter. MELOSKIE has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. MELOSKIE and MELOSKIE's counsel have no interests which might cause them not to vigorously pursue the instant class action lawsuit.

**45.** This action has been brought and may be maintained as a "B1a-class", a "B2-class", a "B3-class", or a hybrid of any two or all three types. Based on discovery and further investigation, Plaintiff will particularize the type of class action at the time of the motion for class certification and, at this time, alleges:

**46.** Certification of a class under Fed. R. Civ. P. 23(b)(1)(a) is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for VIKING.

**47.** Certification of a class under Fed. R. Civ. P. 23(b)(2) is appropriate in that a determination that VIKING's voice mail messages violate 15 U.S.C. §§ 1692d(6), 1692e(10) or 1692e(11) is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

**48.** Certification of a class under Fed. R. Civ. P. 23(b)(3) is appropriate in that the questions of law and fact common to members of the Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

### VIII. CAUSE OF ACTION FOR VIOLATIONS OF THE FDCPA

49. MELOSKIE realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

50. MELOSKIE is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

51. VIKING is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

52. The Debt is a "debt" within the meaning of 15 U.S.C. §1692a(5).

53. Each Message is a "communication" as defined by 15 U.S.C. § 1692a(2).

54. Each telephone message was left by VIKING for MELOSKIE in an attempt to collect the Debt.

55. VIKING's use of the telephone message violated the FDCPA in one or more of the following ways:

55.01. Placing a telephone call without meaningful disclosure of the caller's identity in that the caller did not state the purpose of the call as an attempt to collect a debt in violation of 15 U.S.C. §1692d(6);

55.02. By leaving a telephonic voice message which failed to either disclose that the purpose of the call was to collect a debt, that the caller is from a debt collector, or that the caller was attempting to collect a debt and any information obtained would be used for that purpose in violation of 15 U.S.C. § 1692e(10); and

55.03. Communicating with a consumer without disclosing either that the call was from a debt collector or that the caller was attempting to collect a debt and any information obtained would be used for that purpose in violation of 15 U.S.C. § 1692e(11).

56. Based on any one of those violations, Defendant is liable to Plaintiff and the Class for statutory damages, attorney's fees and costs.

### IX.  PRAYER FOR RELIEF

57. WHEREFORE, Plaintiff, Elizabeth J. Meloskie, respectfully requests that the Court enter judgment against Defendant, Viking Client Services, Inc. also known as Viking Client Service and Viking Collection Services, as follows:

57.01. An order certifying that the Cause of Action may be maintained as a class pursuant to Fed. R. Civ. P. 23 including defining the class, defining the class claims, and appointing MELOSKIE as the class representative and the undersigned attorney as class counsel;

57.02. An award of statutory damages for MELOSKIE pursuant to 15 U.S.C. § 1692k(a)(B);

57.03. An award of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(B);

57.04. Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(B)(3); and

57.05. For such other and further relief as may be just and proper.

### X.  JURY DEMAND

58. Plaintiff, Elizabeth J. Meloskie, demands a trial by jury on all issues so triable.

### XI.  CERTIFICATION PURSUANT TO LOCAL CIVIL RULE

59. Pursuant to L. Civ. R. 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

Philip D. Stern & Associates, LLC
Attorneys for Plaintiff, Elizabeth J. Meloskie

*s/Philip D. Stern*
Philip D. Stern

Dated: October 23, 2012